UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN C. VOTTA JR. )<br>       Plaintiff )<br>       )<br>v. )<br>       )<br>MARTHA COAKLEY )<br>       Defendant ) | Civil Action No. 04-10135-GAO |

PLAINTIFF'S MEMORANDUM OF REASONS IN SUPPORT
OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT.

I.    STATEMENT OF THE CASE AND PROCEDURAL BACKGROUND

The gravamen of this case began with an incident on November 27, 1995, when a Massachusetts State Trooper entered plaintiff's automobile dealership for a random inspection of his business pursuant to M.G.L.c.140 s.62, a criminal statute requiring auto dealerships to maintain, in order, every vehicle transaction in a used car record book authorized by the Registrar of Motor Vehicles. During the inspection, the trooper found plaintiff's record book not up to date. When plaintiff offered to provide the requested information from an alternate record keeping system, the trooper declined to accept plaintiff's offer after plaintiff expressed his opinion that the current record book law was flawed. Two days later the same trooper returned to plaintiff's business with two other troopers and cited plaintiff to pay a fine of five hundred dollars, the maximum allowed under the law, and recommended a hearing before the Registrar. After the hearing the Registrar, on March 26, 1996, ordered that all of plaintiff's dealership vehicle registration plates be revoked, indefinitely. On May 1, 1996, the Registrar

changed the statute to allow automobile dealerships a choice of maintaining either the traditional record book or an updated computerized system almost identical to the alternate record keeping system employed by plaintiff. On June 7, 1996, plaintiff filed an administrative appeal with the Board of Appeal on Motor Vehicle Liability Policies and Bonds, hereafter referred to as the "Board". On June 21, 1996, the Board affirmed the Registrar's decision. On July 16, 1996, plaintiff filed an action, in state Superior Court, to compel the Registrar to reverse his decision to revoke. On March 14, 1997, a judge of the Superior Court converted plaintiff's action to one for judicial review of the Board's decision under M.G.L.c.30A s.14. On May 29, 1997, plaintiff filed a six count complaint against the trooper, William Schaefer; Registrar, Jerold A. Gnazzo; and the Commonwealth, in the United States Federal District Court, for various civil rights violations.

Shortly after, plaintiff's customers were arbitrarily refused registration of their vehicles that were purchased from the plaintiff. On one such occasion, on February 5, 1998, plaintiff accompanied two of his customers on a visit to the Registry of Motor Vehicle branch location in Lowell, where the trooper, William Schaefer also worked,{see note 1}. There a registry clerk, who had previously refused to process paperwork submitted by plaintiff's customer, also refused to assist plaintiff with the same paperwork. The plaintiff then complained to the clerk's supervisor, in open public, about her incompetence. Moments later, the clerk told her husband that the plaintiff had pushed her which then caused her husband to

---

note 1: Here defendant has misconstrued plaintiff's amended complaint. Specifically, defendant states on page two of the memorandum of law: "The clerk summoned her husband, a State Trooper who worked at the Registry (and against whom Plaintiff had previously filed a civil rights action), who allegedly physically attacked plaintiff. Id.". This restatement of plaintiff's amended complaint is grossly misstated; the clerk's husband was neither a state trooper nor a registry employee.

confront and physically attack the plaintiff. After a few spectators came to plaintiff's aid, the police were summoned, took statements from the alleged victim, plaintiff and his customers, after which the police advised both his customers and plaintiff to leave. A week later, plaintiff met with a registry lawyer, Robert Horack who had supervised plaintiff's public record request regarding the federal lawsuit and the manager, James Rooney, of the Lowell branch who conceded that the customer's paperwork was in order and that to contact him if there were any future problems. A few weeks later, plaintiff received a summons to appear on a criminal charge of assault and battery on a public servant. The police department, the assistant district attorney and the clerk magistrate of the court refused to accept plaintiff's counterclaim against the clerk's husband.

On April 29, 1998 the Federal District Court granted summary judgment in favor of each of the defendants. On August 25, 1998 the Massachusetts Appellate Division vacated the finding of responsible on trooper Schaefer's complaint against the plaintiff. On December 24, 1998, based on this new evidence, the state Superior Court remanded to the Board for it to reconsider it's decision in upholding the Registrar's revocation. On January 25, 1999, the Court of Appeals for the First Circuit affirmed the federal district court's judgment and denied plaintiff's request to abstain, pending the outcome of the state court proceedings. On June 8, 1999, the Board re-affirmed its original decision. On June 19, 2000, the Superior Court, reversed the Registrar's arbitrary decision to revoke plaintiff's dealer plates. Armed with these two victories, against the Trooper{see page 4, note 2} and the Registrar, plaintiff attempted to return to federal court, on April 26, 2002, by way of a supplemental pleading,{see page 4, note 3}. The federal court denied leave to file a supplemental pleading on May 1, 2002.

II.     DEFENDANT'S ALLEGED AFFIRMATIVE DEFENSES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT.

(a) Introduction

The defendant, Martha Coakley, now moves to dismiss plaintiff's amended complaint asserting that plaintiff lacks standing and that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's amended complaint does establish subject matter jurisdiction pursuant to Fed.R.Civ.P.12(b)(1). Moreover, a defendant, moving to dismiss pursuant to Fed.R. Civ.P. 12(b)(6), bears the burden of demonstrating that the pleader is not entitled to any recovery. See,e.g., Ragin v. New York Times Co., 923 F.2d 995, 999 (2nd Circ.1991, cert. denied, 502 U.S. 821 (1991). When a claim is challenged under Fed.R.Civ.P.12(b)(6), the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleaders favor, and views the pleading in the light most favorable to the non-moving party. See Albright v. Oliver, 510 U.S. 266, 267 (1994). A court may only dismiss a pleading if "it appears beyond doubt that [the party seeking relief] can prove no set of facts which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46(1957); Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Circ.1990).

Although a claim for relief may be quite detailed, a party making a claim must satisfy only the notice pleading standard under Fed.R.Civ.P. 8(a). A pleading generally meets the

---

note 2: Plaintiff did not pursue his claim against trooper Schaefer who had committed suicide prior to plaintiff's efforts to return to federal court.

note 3: Plaintiff also filed a civil rights action in Superior Court on November 15, 2000, and on June 6, 2001 Superior Court Justice, Maria Lopez, dismissed plaintiff's complaint as time barred under state statute of limitations.

notice pleading standard if the pleading notifies the adverse party of the claim and the proposed relief sought to a degree sufficient to enable the adverse party to formulate a response. See, e.g., Hamilton v. Allen-Bradley Co., 217 F.3d 1321(11th Circ.2000)(short and plain statement of claim showing entitlement to relief is all that is required; "Detail is not the bedrock on which a proper complaint stands"). A pleader does not have to set forth legal theories. See, e.g., Kirksey v. R.J.Reynolds Tobaco Co., 168 F.3d 1039, 1041(7th Circ.1999). In its liberality, Rule 8(a)'s notice pleading standard thus erects a powerful presumption against dismissing pleadings as deficient. See, e.g., Gilligan v. Jamco Dev't Corp., 108 F.3d 246, 249 (9th Circ.1997).

In support of defendant's motion to dismiss plaintiff's amended complaint, defendant, Martha Coakley advances two legal theories, which are the bar provided by the federal common law of Heck v. Humphrey, 512 U.S. 477(1994) and various forms of immunity; neither of which apply to the facts alleged in plaintiff's amended complaint and which, therefore, necessitates the failure of defendant's motion to dismiss.

(b) Alleged affirmative defense - Heck v. Humphrey

In relying on Heck v. Humphrey, the defendant sums up her argument, on page 5 of defendant's memorandum: "Heck presents Plaintiff with an irresolvable dilemma." Here, the defendant is dead wrong. To be sure, the defendant's choice in relying on a defense under Heck v. Humphrey, to shield her unlawful conduct, may be a viable election, up to a point, and only to the extent that both petitioner Heck and this plaintiff fell victim to a conspiracy, by state officials, to cause an unjust criminal conviction. Beyond this juncture the distinction ends and the defendant's argument, on page 5, fails:

> "If the allegations showed that the District Attorney had opposed this appeal in some unconstitutional fashion, the only plausible harm to Plaintiff is that he was denied a

5

ground of appeal that would otherwise have freed him from the conviction. Since Heck bars such claims, Plaintiff cannot establish a nexus between the conduct alleged and any injury in fact cognizable under section 1983."

Here, the defendant misapplies Heck. Unlike this plaintiff, petitioner Heck, a prisoner, was suing state officials for unlawful conduct that caused his conviction, an impermissible situation under the Supreme Court's ruling. On the other hand, plaintiff, who is not seeking relief for unlawful conduct that caused his conviction, is suing the defendant for misuse of legal process for the purpose of interfering with the success of his appeals, {see note 4}; a separate, distinct and independent source of conduct expressly permitted by Heck: "For example a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the section 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source [emphasis added] and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539(1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-308(1991), such as a section 1983 action, even if successful, would not [necessarily] imply that the plaintiff's conviction was unlawful." Id., at 487, note 7.

This argument puts to rest defendant's assertion of plaintiff's irresolvable dilemma and allows this Court discretion to grant relief, ("But if the district court determines that the plaintiff's action, even if successful, will [not] demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Id at 487.

---

note 4: Although, initially, in his original complaint, plaintiff did approach this Court like petitioner Heck, plaintiff, then, re-approached this Court in an amended complaint unlike petitioner Heck who failed to heed the Supreme Court's remedy and who, if he had, would have, more than likely, overturned his conviction on appeal, absent unlawful interference

As to defendant's assertion that plaintiff has failed to plead any injury in fact, the defendant ignores the fact that even a presumably guilty and convicted person is entitled to a fair and unobstructed appeal. See Blake v. Berman, 598 F.Supp. 1081, 1083 (D.Mass.1984). Moreover, it can be a deprivation "of life, liberty, or property, without due process of law," in violation of the Fourteenth Amendment, for state officials to deny a person "access to the courts." See Bounds v. Smith, 430 U.S. 817 (1977). In Lewis v.Casey, 518 U.S. 343, 346, the Court said:

> "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury', took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim' Id at 346.

The actual injury suffered by the plaintiff was the severe emotional distress of enduring the defendant's intentional and unlawful actions in obstructing plaintiff's appeal process on as many as twenty six occasions in the Lowell District Court (see amended complaint paragraphs 6-8){also, see note 5}. Even one incident, or occasion, involving outrageous conduct can cause a plaintiff to experience severe emotional distress. See, Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315 (1976)(" 'Outrageous' conduct has been defined as 'extreme,' 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community'." ) Id., at 145, 355 N.E.2d 315, {see note 6}.

---

note 5: During the length of time of his appearances in the Lowell District Court, plaintiff's medication for hypertension, which began shortly after the Registrar's unlawful revocation, needed to be doubled, notwithstanding the fact that during this same interval of time his wife suffered two strokes.

note 6: Assistant district attorney, Jane L. Fitzpatrick's outrageous conduct, specifically directed by the defendant (amended complaint paragraphs 6-8), resulted in the vacating of plaintiff's sentence, (Justice Maurice Flynn delivered the decision in the absence of Chief Judge, Neil J. Walker), and accompanied with a round of applause from the court's audience.

Finally, the defendant's speculative hypothesis that a favorable judgment by this Court, based on plaintiff's amended complaint, would necessarily imply, under Heck, that plaintiff's conviction was invalid, is not only unavailing, but, it can also be factually disproved. On June 23, 2003, plaintiff submitted a petition for rehearing of his second appeal, Commonwealth v. Votta, 789 N.E.2d 606 (2003){see note 7}, with the Massachusetts Appeals Court and in that petition, plaintiff cited every allegation contained in plaintiff's amended complaint, and more; the petition was denied on July 15, 2003. On June 26, 2003, plaintiff filed a petition for further appellate review in the Massachusetts Supreme Judicial Court and raised the identical issues from his petition for rehearing in the court below; the High Court denied further appellate review on September 5, 2003. Therefore, if the state's intermediate court and the state's highest court declined to grant any relief based on defendant's unlawful conduct <u>after</u> plaintiff's conviction, then neither would a judgment by this Court imply that the conviction was invalid.

<u>(c) Alleged affirmative defense against injunctive relief</u>

In moving to dismiss plaintiff's amended complaint for injunctive relief, defendant relies heavily on <u>O'Shea v. Littleton</u>, 414 U.S. 488, 493-504 (1974), asserting, on page 6 of defendant's memorandum, that <u>O'Shea</u> "sets forth at length the interrelated doctrines of federal jurisdiction and comity that generally prohibit federal courts from entering injunctive relief with respect to state criminal prosecutions".

---

note 7: The Massachusetts Appeals Court chastised plaintiff for his "belated assertion" of the newly discovered evidence of the Commonwealth's alleged nondisclosure; a situation plaintiff (then a defendant) had no control over and which was due to the intentional misuse of the rules of criminal procedure by assistant district attorney, Jane L. Fitzpatrick (and specifically directed by the defendant) to prevent the issue from being properly raised in his first appeal.

8

However, the defendant overlooks the fact that state law provides injunctive relief as well as monetary damages for violation of state rights. While injunctive relief, under federal law, requires a showing of irreparable injury, see, City of Los Angeles v. Lyons, 461 U.S. 95 (1983), a showing of irreparable injury is not a prerequisite for granting an injunction under the Massachusetts Civil Rights Act, of which this Court has supplemental jurisdiction. Even a single egregious act of misconduct, in appropriate circumstances, can justify an injunction, e.g., in Commonwealth v. Adams, 624 N.E.2d 102 (1993), the Massachusetts Supreme Judicial Court said:

> "A single, egregious incident involving a collective violation of a citizen's rights and a collective failure to prevent or to report that violation would warrant issuance of an injunction where, as here, the judge found that, without any injunction, the defendants 'will regard themselves as free to continue' their unlawful conduct." Id., at 107.

Although the question of whether, or when, the plaintiff will, or will not, file his petition to the Massachusetts Supreme Judicial Court still remains; the simple answer is, that the petition is not ready to be submitted.

(d) Alleged immunity defenses

In moving to dismiss plaintiff's amended complaint, defendant raises various forms of immunity, none of which shield her unlawful conduct. Defendant's first attempt, to justify her unlawful participation to injure the plaintiff, is grounded on defendant's false assumption of a theory based on supervisory liability. Again, the defendant is dead wrong; plaintiff's amended complaint alleges a cause of action, attaching conspiratorial liability, under 42 U.S.C.S.1985.

Next, the defendant attempts to find succor under the umbrella of prosecutorial immunity, cited in Imbler v. Pachtman, 424 U.S. 409 (1976)("To protect the integrity of the judicial system, prosecutors, like judges, are absolutely immune from civil liability for acts

9

performed in the course of their judicial or quasi-judicial duties, an immunity that extends to claims under section 1983"). However, defendant's reliance on Imbler v. Pachtman, does not include acts performed in the course of extra-judicial or extra-quasi-judicial duties of which the defendant in concert with assistant district attorney, Jane L. Fitzpatrick, is accused of performing, (see amended complaint paragraphs 6-9 and notes 6 and 7, supra).

It is a well settled principle of common law that "[g]rants of absolute immunity ought to be interpreted narrowly to serve only the purpose justifying the immunity." Webster v. Sun Co.,Inc., 731 F.2d 1, 4 (D.C.Cir.1984); see also Burns v. Reed, 500 U.S. 478, 487 (1991) ("We have been quite sparing in our recognition of absolute immunity and have refused to extend it any further than its justification would warrant.")(internal citations and quotations omitted).

Courts have applied a "functional approach" in determining whether or not a prosecutor enjoys absolute immunity from a section 1983 liability. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). The availability of absolute immunity depends on the nature of the function being performed rather than the identity of the actor who performed it. Buckley, 509 U.S. at 269 (quoting Forrester v. White, 484 U.S. 219, 229 (1988). Thus absolute immunity protects those acts which are closely associated with the judicial process and which are performed in the course of the prosecutor's role as an advocate for the State. Imbler, 424 U.S. at 430.

None of the facts presented in either Imbler v. Pachtman or Burns v. Reed relate to the facts as alleged in plaintiff's amended complaint. The facts in Imbler led to the question of "whether a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is amenable to suit under 42 U.S.C. section 1983 for alleged

10

deprivations of the defendant's constitutional rights." Id., at 410. The facts in <u>Burns</u> raised the issue as to "whether a state prosecuting attorney is absolutely immune from liability for damages under 42 U.S.C. section 1983 for giving legal advice to the police and for participating in a probable cause-hearing." Id., at 481

The question here is whether the ulterior motive, i.e., the express or implied agreement between defendant Martha Coakley and assistant district attorney Jane L. Fitzpatrick as well as other assistant district attorneys, to hinder plaintiff's appeal process, falls within the definition of an advocate for the state.

In <u>Burns,</u> the Court expressed concern with the distinction between the complained of actions and the motive behind the actions:

> "Initially, it is important to determine the precise claim that petitioner has made against respondent concerning respondent's role in the search warrant hearing. An examination of petitioner's complaint, the decisions by both the District Court and the Seventh Circuit, and the questions presented in the petition for a writ of certiorari in this Court reveals that petitioner has challenged only respondent's participation in the hearing, [and not his motivation in seeking the search warrant][emphasis added] or his conduct outside of the courtroom relating to the warrant." Id., at 487.

The distinction between a claim against respondent's participation in the hearing, as opposed to his motivation in seeking the search warrant is important because if the petitioner (Burns) had raised the issue of an improper motive, the Court would have found in favor of petitioner on this point as well, (also see the Court's reasoning on this issue at 490, note 5).

Therefore, because the issues in both <u>Imbler v. Pachtman</u> and <u>Burns v. Reed</u> are wholly different than the issues in the instant case, the defendant's argument that she is entitled to absolute immunity must fail.

The defendant's final defense of qualified immunity is equally unavailing when viewing the doctrine of qualified immunity which protects government officials performing

11

discretionary functions from liability for civil damages as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Anderson v. Creighton, 483 U.S. 635, 639 (1987). Qualified immunity enables government officials to exercise their official duties with independence and without fear of subsequent civil actions against them; it protects "all but the plainly incompetent or those who knowingly violate the law", Lowinger v. Broderick, 50 F.3d 61, 65 (1st Circ.1995); Rivera v. Murphy, 979 F.2d 259, 263 (1st Circ.1992)(quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991). Plaintiff's amended complaint alleges wrongdoing by the defendant, in performance of her duties while acting under color of state law, but is held to bar in her individual capacity. Hafer v. Melo, 502 U.S. 21, (1993); Pasqualone v. Gately, 422 Mass.398, 402-404, 662 N.E.2d 1034, 1037-1038 (1996). A personal capacity action under section 1983, can be brought against the defendant by merely establishing that the defendant, acting under color of state law, caused the deprivation of a federal right, Scheuer v. Rhodes, 416 U.S. 232 (1974), even though the alleged wrong was committed in her official capacity while performing official functions. Price v. Akaka, 915 F.2d 469 (9th Circ.1990).

The federal right violated by the defendant, was plaintiff's right to petition the Massachusetts Appeals Court without unlawful interference, (amended complaint, Count I).

When a defendant raises the defense of qualified immunity, the first and foremost question is whether the conduct of which the plaintiff complained constitutes a violation of clearly established law. St. Hilaire v. Laconia, 71 F.3d 20, 24 (1st Circ.1995). This is an objective test which requires a determination of the protected right as well as a determination of how particularly the right must be stated. Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Circ.1999)(quoting Anderson, 483 U.S. at 640. Under this test, public officials are

charged with knowledge of the law governing their conduct. Lopez v. Robinson, 914 F.2d 486 (4th Circ.1990).

Even if a defendant's alleged conduct violated a plaintiff's rights under law which was clearly established at the time of the conduct, qualified immunity is available if the defendant's conduct was objectively reasonable in light of the law. Camilo-Robles v. Zapata., 175 F.3d 41, 43 (1st Circ.1999). The objective reasonableness of the defendant's action is assessed from the perspective of a reasonable official charged with knowledge of established law, Lopez v. Robinson, supra.

Only those government officials performing discretionary functions, as opposed to ministerial functions, are entitled to qualified immunity. Davis v. Scherer, 468 U.S. 183 (1983); Harlow v. Fitzgerald, supra. Although the defendant asserts, in her motion to dismiss plaintiff's amended complaint, that the complained of acts were undertaken pursuant to the performance of her prosecutorial duties and within the scope of her discretion, the defendant has failed to provide any facts to refute plaintiff's claim of ill will and abuse of discretion. See e.g., Gildea v. Ellershaw, 363 Mass. 800, 820, 298 N.E.2d 847, 858, 859 (1973).

Based on the foregoing, defendant Martha Coakley's unlawful conduct would not be immunized and the defendant would be liable, in her individual capacity.

II.     DEFENDANT'S LACK OF DEFENSE TO A CONSPIRACY

In moving to dismiss plaintiff's amended complaint, the defendant has failed to deny any participation in a conspiracy to injure the plaintiff by the actions alleged in Count I of plaintiff's amended complaint.

(a) Civil conspiracy

42 U.S.C.S.1985(2) creates a cause of action under the following relevant

13

circumstances:

> "or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws, . . . "

A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Mitchell v. City of Boston, 130 F.Supp.2d 201, (D.Mass.2001).

To prevail on a civil conspiracy claim, plaintiff must show that defendant Martha Coakley was part of a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principle element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages'" to the plaintiff. Earle v. Benoit, 850 F.2d 836, 844 (1st Circ.1988)(citing Hampton v. Hanrahan, 600 F.2d 600, 620-621 (7th Circ.1979), rev'd in part on other grounds, 446 U.S. 754 (1980).

The defendant, Martha Coakley, was a co-conspirator in two separate conspiracies; the first involved the named defendants in paragraph 3 of plaintiff's original complaint and for the purpose of bringing a bad faith prosecution, which resulted in an unjust criminal conviction, and brought in retaliation for plaintiff's petitioning to the courts for relief from unlawful actions by a state trooper and the Registrar of Motor Vehicles. The first conspiracy was extinguished when the jury rendered its verdict. The second conspiracy (plaintiff's amended complaint) began when plaintiff's trial attorney filed a motion for a new trial. When the defendant, Martha Coakley, employed her resources to frustrate and discourage plaintiff's trial and appellate attorneys, plaintiff, without sufficient resources, was compelled to continue

his pursuit for justice on his own behalf.

During the course of the second conspiracy, defendant Martha Coakley did form an agreement, either expressed or implied, in combination with assistant district attorney, Jane L. Fitzpatrick, and other assistant district attorneys, to act recklessly, with the object or purpose of maintaining plaintiff's conviction, by means of overt acts in an unlawful use of the rules of criminal procedure and by making false representations to judges in the Lowell District Court to discourage and hinder plaintiff from pursuing his appeals, and done with deliberate indifference to plaintiff's constitutional rights, which resulted in the denial of a meaningful appeal causing plaintiff to suffer severe emotional distress, (see plaintiff's amended complaint paragraphs 6-9 and page 8, note 7, supra.).

## CONCLUSION

Based on all of the foregoing, this Court should deny defendant Martha Coakley's motion to dismiss plaintiff's amended complaint.

Respectfully submitted,

*/s/ John C. Votta Jr.*

John C. Votta Jr.
505 Douglas Rd.
Lowell, MA. 01852
978 459-8449

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon David M. Lieber, A.A.G., Criminal Bureau, One Ashburton Place, Boston, MA. 02108, by U.S. mail today.

Date: 4-22-04   Signed: */s/ John C. Votta Jr.*

15